428 So.2d 745 (1983)
Edwin James BROCKMAN, Jr., Appellant,
v.
CITY OF DANIA and Division of Workers' Compensation of the Department of Labor and Employment Security, Appellees.
No. AM-185.
District Court of Appeal of Florida, First District.
March 24, 1983.
Scott R. Gill of Panza & O'Donnell, Fort Lauderdale, for appellant.
H. George Kagan of Miller, Hodges & Kagan, Miami, for appellees.
NIMMONS, Judge.
This is a workers compensation case in which the claimant appeals from the deputy commissioner's order finding that his accident did not arise out of or in the course of his employment with the City of Dania. Brockman, an off-duty policeman, hurt his right ankle while engaged in a softball game between off-duty policemen and off-duty firemen of the City of Dania. The game was instigated by the Chamber of Commerce in connection with the celebration of the City's birthday. It was played at a city-owned park in December, 1981.
Florida Worker's Compensation law requires compensation to be payable "if the disability or death results from an injury arising out of and in the course of employment." § 440.09(1), Florida Statutes.
We agree with the three-prong test stated by Professor Larson for the determination of the circumstances under which recreational or social activities come within the course of employment. As stated in Larson's Workmen's Compensation Law, Vol. 1A, § 22.00, such activities are deemed to be in the course of employment when any one of the following criteria are met:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
Claimant suggests that this was an "on the premises" accident since it occurred at a park owned by the City. This is an insufficient nexus between claimant's employment and the accident to satisfy Larson's first criterion. Further, the softball game did not take place "during a lunch or recreation period" and was not "a regular incident of the employment" of claimant. Indeed, it is undisputed that the activity in question did not occur during claimant's working hours.
Claimant also urges that this accident was compensable under Larson's above-quoted second criterion because of the "degree *746 of employer sponsorship" of the softball game. Claimant points to the notice posted on the squad room bulletin board encouraging participation in the softball game. Lieutenant Cates, who was very active in baseball in his private life, was the principal organizer of the game for the police officers' team. Although he was under no compulsion by the City to promote the game, Cates posted the notice on the bulletin board announcing the activity and urging anyone interested to sign up. Claimant testified that Cates told him that he wanted claimant to play and "needed guys to sign up so we can make a good showing because there will be a trophy given." Uniforms were furnished, not by the City, but by the Fraternal Order of Police and the lettering on the uniforms referred to the Fraternal Order of Police and not the City. Since claimant would not be permitted to play during working hours, he was allowed to change shifts so that he could participate in the game. It should be noted that the claimant had, on other occasions in the past, been given permission to change his work schedule for purely personal reasons. Of course, far more police officers did not participate in the softball game than those who did. The above evidence falls short of establishing that the City impliedly required participation or made the game a part of the services of claimant's employment.
With respect to Larson's third criterion, claimant fares no better. He has failed to demonstrate that the City derived "substantial direct benefit" from the game beyond the intangible benefit of improvement of employee morale common to any kind of recreational activity. There was no evidence that the City derived any financial benefit. Indeed, the record fails to disclose whether tickets were sold or admission was charged. In fact, for aught that appears from the record, the only persons attending were family and friends of the participants.
The deputy commissioner's order finding no compensable accident is supported by competent substantial evidence comporting with logic and reason.
AFFIRMED.
BOOTH and WIGGINTON, JJ., concur.